**Fourney v. Regester Associates Inc.**

C.P. of Chester County, no. 94-02325.

*Michael T. Arnold,* for plaintiff.
*John T. Nicholson,* for defendants.

WOOD, *J.,* May 12, 1995—This matter is before me on defendants' preliminary objections to plaintiff's amended complaint. In ruling on preliminary objections in the nature of a demurrer, I cannot consider allegations outside the record. I must accept as true all material facts alleged in the complaint as well as inferences reasonably deducible therefrom. *Santiago v. Pennsylvania National Mutual Casualty Insurance Company,* 418 Pa. Super. 178, 613 A.2d 1235 (1992). "The question presented by the demurrer is whether, on the facts

averred, the law says with certainty that no recovery is possible." *Id.* at 184, 613 A.2d at 1238.

The complaint alleges as follows: From May 1, 1973 until May 11, 1993, plaintiff was employed by defendant Regester Associates Inc. In December of 1986, defendant James R. Aiken, majority shareholder, president, officer and director of Regester, invited plaintiff to become a shareholder of the corporation and hold the positions of officer and director. Plaintiff accepted the offer and provided a promissory note for $16,000 to purchase five shares of stock. Plaintiff also executed a restricted stock purchase agreement which precluded him from assigning, selling, transferring or encumbering his shares.

Aiken dominated and controlled Regester. At times he told the plaintiff that he would need him to work without pay or at reduced hours because of financial problems. In March of 1991, Aiken began to determine on a weekly basis whether or not plaintiff would be paid. From March of 1991 until January of 1992, plaintiff received only 18 checks. In October of 1992, plaintiff advised Aiken that physical problems would prevent him from continuing to do extra work as a field surveyor. Aiken threatened his job and demanded a doctor's note to substantiate plaintiff's condition. In November of 1992, plaintiff provided a doctor's note and Aiken took away all of the perks the other directors enjoyed. The plaintiff was no longer able to take personal time off for doctor's appointments and childrens' school activities. In March of 1993, Aiken again reduced plaintiff's hours. In May of 1993, Aiken laid off the plaintiff, while he continued to employ the other directors full-time and pay himself a salary. During this time the company also showed a profit. In September of 1993, Aiken discharged plaintiff without cause.

Regester's cash distributions to shareholders were not in accordance with the percentage of stock ownership and Aiken ignored plaintiff's request for payment of his proportional share. Aiken's actions in terminating plaintiff, refusing to pay benefits, failing to respond to inquiries and treating plaintiff different from other shareholders caused him severe emotional distress in the form of headaches, nervousness, sleeplessness, nausea, anxiety and other physical ailments.

Plaintiff claims that Aiken breached his fiduciary duty to protect the plaintiff's interest as a minority shareholder by: (1) controlling the company to limit plaintiff's participation in management and policy, (2) benefitting from the unilateral decisions to stop paying plaintiff and (3) taking corporate actions without consulting the board of directors, officers or shareholders. Plaintiff states that these actions have enriched defendants to his detriment.

## COUNT I

Defendants demur to Count I, a wrongful discharge claim, based on the fact that plaintiff has failed to plead the existence of a contract or some other reason for protecting him in his employment.

"In Pennsylvania, it is presumed that an employee is at-will where, as here, there is no written employment contract. One can rebut the at-will presumption by showing that the employee provided additional consideration apart from the detriments commensurate with those incurred by all manner of salaried professionals. It is a question of fact whether, in a given case, an employee has given additional consideration sufficient to rebut the at-will presumption." *Brozovich v. Dugo,* 651 A.2d 641, 643 (Pa. Commw. 1994). (citations omitted)

In this case plaintiff's purchase of stock in the corporation and performance of additional duties as an officer and director, if proven, would allow a jury to conclude that he provided sufficient additional consideration to overcome the presumption that his employment was at-will. See *Greene v. Oliver Realty Inc.,* 363 Pa. Super. 534, 526 A.2d 1192 (1987) (promise of lifetime employment in exchange for a rate of pay less than union wages permitted to go to the jury on the question of sufficient additional consideration).

## COUNT III

Defendants also demur to Count III of the complaint which, in effect, alleges that all these things that defendant Regester Associates did caused plaintiff "severe emotional distress and extreme mental pain and suffering including but not limited to headaches, nervousness, sleeplessness, nausea, anxiety and other physical ailments." The question is whether or not those allegations state a cause of action.

There is no cause of action in Pennsylvania, to my knowledge, based simply on the fact that one experiences emotional distress. There *is* a cause of action for negligent infliction of emotional distress,[1] and there *may be* a cause of action for intentional infliction of emotional distress.[2] However, neither of these causes of action are supported by these allegations. The complaint does not support the conclusion that any of the defendants' acts were negligent, and the key paragraph of Count III simply says that as a result of the actions of defendant Regester Associates Inc., plaintiff "has experienced" various ailments. It does not allege suf-

1. *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992).
2. *Johnson v. Caparelli,* 425 Pa. Super. 404, 625 A.2d 668 (1993).

ficient facts to show that defendant's actions were outrageous.

I should consider, however, whether to give plaintiff the opportunity to amend. Thus, I must go more deeply into the basis of the two causes of action cited above.

The action for negligent infliction of emotional distress is supposedly based on section 313 of the Restatement (Second) of Torts, which reads as follows:

*"Emotional distress unintended*

"(1) if the actor unintentionally causes emotional distress to another, he is subject to liability to the other for a resulting illness or bodily harm if the actor:

"(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and

"(b) from the facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.

"(2) the rule stated in subsection (1) has no application to illness or bodily harm of another which is caused by emotional distress arising solely from harm or peril to a third person, unless the negligence of the actor has otherwise created an unreasonable risk of bodily harm to the other."

This section has evolved in Pennsylvania so as to allow causes of action in situations where the plaintiff suffers distress from the "contemporaneous and sensory awareness" that a close member of his or her family had been injured.[3] These are the so-called "bystander

---

3. Technically section 436 of the Restatement rather than section 313 covers the "bystander" situation, and it does not really go as far as the Pennsylvania cases.. However, section 313 is the section

cases," and examples include *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979); *Neff v. Lasso,* 382 Pa. Super. 487, 555 A.2d 1304 (1989), and *Love v. Cramer,* 414 Pa. Super. 231, 606 A.2d 1175 (1992). Obviously, the case under consideration is not that kind of case.

There have been occasional attempts in non-bystander cases to establish the same tort in Pennsylvania. A recent example is *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 633 A.2d 605 (1993), *appeal denied,* 538 Pa. 663, 649 A.2d 666 (1994). *Armstrong* involved a situation where a woman was called and told that her husband was badly injured, and that she should come to Paoli Memorial Hospital. When she arrived, she discovered that the injured person was not her husband. Judge Cirillo, speaking for the Superior Court, reviewed the law in the area, and decided that there were only two cases in Pennsylvania which allowed recovery for negligent infliction of emotional distress, on some theory other than the "bystander theory." *Crivellaro v. Pennsylvania Power & Light Co.,* 341 Pa. Super. 173, 491 A.2d 207 (1985) and *Stoddard v. Davidson,* 355 Pa. Super. 262, 513 A.2d 419 (1986). He concluded that *Crivellaro* was not a true "anomaly" in the law because it involved a fiduciary responsibility. In *Crivellaro,* a woman sued her employer, claiming that it had pushed her into an abusive drug treatment program.

Judge Cirillo did conclude that *Stoddard* was an anomaly, but pointed out that it was a panel decision, with one judge dissenting and another concurring in the result, and suggested that it should not be followed. *Stoddard* involved a plaintiff who ran over the body of a person who had been killed and left in a roadway by defendant. In *Armstrong* itself, the Superior Court decided that

---

which the courts appear to cite as the basis of the "negligent infliction" tort. *Armstrong v. Paoli Memorial Hospital,* 430 Pa. Super. 36, 43 n.3, 633 A.2d 605, 609 n.3 (1993).

a claim for negligent infliction of emotional distress had not been stated. I must conclude that a claim could not be stated in this case under the facts as alleged. It may be argued, and it is certainly alleged, that there is a contractual and fiduciary duty here, such as was the case in *Crivellaro*. However, in *Crivellaro* the plaintiff was institutionalized; to my mind, that puts a different burden on the defendant.[4]

The next question is whether these facts would allow the pleading, properly stated, of a cause of action for intentional infliction of emotional distress. This cause of action is based on section 46 of the Restatement (Second) of Torts, which reads:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."

The case law has been rather restrictive on what constitutes "outrageous" conduct. See *e.g., Kazatsky v. King David Memorial Park Inc.,* 515 Pa. 183, 527 A.2d 988 (1987) and *Johnson v. Caparelli,* 425 Pa. Super. 404, 625 A.2d 668 (1993). There is some question whether this is even a recognized cause of action in Pennsylvania. *Hart v. O'Malley,* 436 Pa. Super. 151, 174, 647 A.2d 542, 553 (1994).

Whatever the ultimate outcome of that controversy, I do not think that the conduct of the defendants here

---

4. *Armstrong* also points out that there is a necessity for pleading and providing "physical harm," pursuant to section 436(a) of the Restatement (Second) of Torts. Judge Cirillo said that the law requires "long continued nausea or headaches, repeated hysterical attacks or mental aberration" to establish "compensable injuries." *Armstrong, supra* at 44-45, 633 A.2d at 609. I have my doubt whether the type of injuries complained hereof are sufficient to round out a cause of action for negligent infliction of emotional distress, even if there had been shown to be a breach of duty.

can be characterized as "outrageous." Certainly Aiken acted highhandedly, if we are to believe the averments of the complaint, but otherwise we are dealing simply with an employment situation which went awry. I conclude, as the Superior Court did in *Zikria v. Association of Thoracic and Cardiovascular Surgeons P.C.,* 432 Pa. Super. 248, 637 A.2d 1367 (1994), that the plaintiff has failed to state a cause of action for intentional infliction of emotional distress because this is a "straightforward business dispute, a breach of contract case, and no more." *Id.* at 254, 637 A.2d at 1370. Accordingly, I see no reason to give plaintiff the opportunity to replead.

Count III will be dismissed in its entirety.

## COUNT IV

Defendant objects to Count IV, a breach of fiduciary duty claim, arguing that the complaint fails to state the facts on which the cause of action is based and is not specific enough to prepare an answer or defense. However, I cannot envision what additional information the plaintiff should have provided in his complaint. A majority shareholder has a duty to exercise his power so that a minority shareholder will be able to realize his share of the benefits of the corporation. *Ski Roundtop Inc. v. Hall,* 265 Pa. Super. 266, 401 A.2d 1203 (1979). I believe the plaintiff has properly stated a breach of fiduciary duty.

Therefore, I must enter the following

## ORDER

And now, May 12, 1995, defendants' preliminary objections to Counts I and IV are overruled. Defendants' preliminary objection to Count III is granted.